Paul LEE and Emile Lee, Libelants,

v.

Otto CANDIES, Otto Candies, Inc., and M/V CAPTAIN PAUL, her Engines, Tackle, Apparel, Furniture, etc., Respondent.

No. 3977.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 24, 1963.

Dufour, St. Paul, Levy & Marx, Leonard B. Levy, William M. Lucas, Jr., New Orleans, La., for libelants.

Phelps, Dunbar, Marks, Claverie & Sims, John Poitevent, New Orleans, La., for respondent.

AINSWORTH, District Judge.

This libel in admiralty involves a head-on collision between two vessels, the M/V MISS MAZUR [1] and the Tug CAPTAIN PAUL,[2] which was pushing ahead a single tow, the Barge BROWN AND ROOT 105.[3] The collision occurred on the early afternoon of June 12, 1958, at a point a short distance beyond the eastern end of the north guide wall of the Bayou Boeuf Lock of the Gulf Intracoastal Waterway near Morgan City, Louisiana, on a day when the weather was clear and visibility good.

1. A wooden hulled lugger, 12 gross tons, used as a workboat, not radio equipped.

2. Steel hulled, 34 gross tons, pilothouse controlled, equipped with radio.

3. Flat deck, steel hulled barge, 110 feet in length, 32 feet in width, 6 feet in depth, carrying a cargo consisting of a dragline located in the center of the barge, the dragline being approximately 12 feet high and 8 feet wide.

The CAPTAIN PAUL was heading east, having just locked through the Bayou Boeuf Lock behind the Tug POLARIS and her one-barge tow, also proceeding in an easterly direction. After locking through, the captain of the CAPTAIN PAUL radioed the POLARIS requesting permission to overtake and pass the forward vessel and requesting the captain of the POLARIS to radio ahead to see if there was any traffic ahead in the waterway. The POLARIS' captain agreed to the passing via radio and informed the CAPTAIN PAUL that no radio reply from westbound traffic had been received. The canal at this point bends considerably to the southeast so that vessels proceeding easterly do not have a clear and unobstructed view of approaching westerly traffic. The CAPTAIN PAUL signaled to pass the port side of the POLARIS and moved close to the north bank of the canal at a speed of 4 to 9 miles per hour. As she neared the north bank a suction was created which placed the CAPTAIN PAUL approximately 3 to 4 feet from the north bank but her tow extended at an angle so that the forward port corner of the tow was approximately 30 feet from the north bank.

In the meanwhile, the MISS MAZUR had approached from the east to a position known as the "Point" somewhat near the end of the guide wall of the lock. There is a conflict in the evidence as to whether the MISS MAZUR was stopped and holding at the "Point" or whether it was in motion when the collision occurred. However, the physical facts support our findings that the MISS MAZUR was either at the "Point" on the north bank of the entrance to the lock or maneuvering close to the "Point" when the bow of the CAPTAIN PAUL's tow collided with the lugger causing her to sink and become a total loss.

■ We find the captain of the CAPTAIN PAUL, solely at fault in this collision. He should not have attempted to pass the POLARIS and her tow in the narrow waterway. Nor should he have maneuvered so closely to the north bank

for suction to cause his tug and tow to swing out at an angle and become unmanageable. It is known that such a maneuver causes suction to vessels. The presence of the dragline on the barge his tug was pushing made it impossible for him to have a clear view ahead for approaching or stopped vessels. He should not have relied on radio communication by the captain of the POLARIS as to whether there was approaching westerly traffic. The captain of the MISS MAZUR had maneuvered to a point customarily used as a waiting place for small vessels attempting to enter the locks from a westerly direction. He got as far out of the channel to his starboard side as was possible without running aground. We do not believe he ran into the tow of the CAPTAIN PAUL, but on the contrary, that the CAPTAIN PAUL, no longer under adequate control of its captain because it was caught in suction at the north bank, collided with the MISS MAZUR which was at a position where it had a right to be when attempting to enter the locks.

■ Though the canal was 250 feet wide at the point of collision, only 150 feet thereof was usable as a channel for vessels. It was therefore a narrow channel within the contemplation of Rule 25 of the Inland Rules of the Road, 33 U.S.C.A. § 210, Coast Guard Regulations, 33 C.F.R. 80.01–80.36. The CAPTAIN PAUL should have kept to its starboard side rather than attempt a dangerous passage in a narrow waterway with vision ahead obstructed by the large dragline on the barge ahead. Accordingly, the master of the CAPTAIN PAUL did not see the MISS MAZUR until the bow of his tow was approximately 100 feet away from the smaller vessel. See Martin Marine Transp. Co. v. Jakobson & Peterson, 2 Cir., 1943, 135 F.2d 325, 328.

■ Having violated a statutory rule of the road (Rule 25), it was incumbent upon respondent to sustain the burden of showing not merely that her fault might not have been one of the causes of the accident, but that such violation could not have contributed to the colli-

sion. Pure Oil Company v. Union Barge Line Corporation, 6 Cir., 1955, 227 F.2d 868. Respondent did not meet this burden, for the evidence clearly shows that the MISS MAZUR should have been observed as she approached more than a quarter of a mile away at which time the captain of the POLARIS had warned the CAPTAIN PAUL of the approaching lugger. No explanation is given why the captain of the CAPTAIN PAUL did not see the lugger and we can only conclude that he was inattentive or that his view was obstructed by the dragline on the barge his tug was pushing.

Libelants are entitled to an interlocutory decree in accordance with this opinion.